W. W. Bercaw v. Commissioner.
W. W. Bercaw v. Commissioner
Docket No. 7263.
United States Tax Court
1947 Tax Ct. Memo LEXIS 334; 6 T.C.M. (CCH) 27; T.C.M. (RIA) 47005; January 21, 1947
W. W. Bercaw, pro se. E. M. Woolf, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax liability for 1941 in the amount of $48.37. The deficiency results from respondent's *335 disallowance of certain deductions claimed by petitioner as business expense, losses and bad debts. By his second amended petition the petitioner claims increased deductions over those claimed on his return as a result of which petitioner now claims an overassessment in the amount of $48.91. The questions are: (1) whether certain expenses incurred by petitioner while on duty as an Army officer are ordinary and necessary business expenses; (2) whether petitioner can deduct as a loss the value of certain property which had been placed in storage and which was not received by him in a shipment purporting to include such property; and (3) whether certain amounts advanced by petitioner to his minor son's guardian to defray costs on an unsuccessful suit seeking damages for injuries to his son are deductible as a bad debt or as a nonbusiness expense. Petitioner filed his return with the collector for the district of Virgina. The case was submitted on oral testimony. Findings of Fact Petitioner is an individual residing at Bonrebels, Wilmington, Virginia. Since 1920 and until August 20, 1941, petitioner was employed as a revenue agent by the Bureau of Internal Revenue. On August 20, 1941, petitioner *336 was called into active service as a reserve Army officer in which capacity he served throughout the remainder of 1941. From August 20, 1941 through December 31, 1941, petitioner was stationed at Fort Meade, Maryland, except for a 12-day period during which he was stationed at New Cumberland Reception Center, New Cumberland, Pennsylvania. During the taxable year and while petitioner was serving in the Army he made certain expenditures as follows: Repairing pocket watch
$3.99
Purchase of electric clock
3.03
Purchase of riding crop
5.00
The watch repaired had been acquired by petitioner in 1926 and was used by him from time to time before, after and during his military service. At Fort Meade during the latter part of 1941, petitioner's duties involved getting recruits to various points at Fort Meade for processing at specific times. The necessity for exact timing in the performance of his military duties involved frequent reference by petitioner to his watch. Petitioner accidentally dropped his watch and paid $3.99 in September or October 1941 to have it repaired. In October 1941 petitioner paid $3.03 for the electric clock which he caused to be installed in *337 his enlisted men's headquarters. These enlisted men whom petitioner supervised carried out petitioner's responsibility for getting recruits to designated places at appointed times. Petitioner considered it advisable in the performance of such duty that the enlisted men have a clock in their headquarters. This clock was recorded on the Company property records as Company property acquired by contribution. During the latter part of 1941 and while in military service, petitioner purchased a riding crop for $5.00. It was an item of cavalry equipment. Petitioner used the crop while riding Army horses at Fort Meade. Petitioner was not required by the Army to purchase the crop nor to ride horseback in the performance of his duties. The Army made horses available to its personnel for riding for recreational and physical fitness purposes. In July 1921 petitioner purchased a farm in Wilmington, Virginia. Petitioner's wife and child moved there to live in September 1941. During the latter part of 1941 petitioner made 14 trips on week-ends from his military station to this farm and back. One such trip was made by railroad from the New Cumberland Reception Center at a cost of $12.00. The remaining *338 13 trips were made from Fort Meade in petitioner's personally owned automobile or truck. The round trip by automobile from Fort Meade to petitioner's farm is about 320 miles. Petitioner estimated that this trip by automobile cost four cents a mile or a total of $166.40. During the latter part of 1941, while in military service, petitioner spent $178 for meals and "striker" service. It was customary for officers at Fort Meade to voluntarily organize themselves into officers' messes. These messes purchased food and hired the necessary help to prepare and serve it. Such messes were financed by monthly assessments on the members. Petitioner was a member of such a mess while at Fort Meade and paid in assessments for its support approximately $1.25 a day. There was no official Army compulsion with respect to the formation of such messes. "Striker" service is an Army expression describing janitor service. It was customary at Fort Meade for officers living in Army furnished quarters to hire janitors to clean rooms and hallways and perform other similar duties in and around such quarters. The money to pay such janitors was furnished in equal amounts by the officers benefited. "Striker" *339 service is a voluntary arrangement entered into by Army officers and is not prescribed or required by Army regulations or otherwise. Petitioner participated in such an arrangement while at Fort Meade and his monthly share of the expense was approximately $10.00. From August 20 to December 31, 1941, petitioner received as an Army captain a base pay of $200 a month plus about 25 per cent of such base pay for length of service. In addition to this base pay petitioner received approximately $80 a month as rental allowance and $36 a month for subsistence. Petitioner's individual quarters at Fort Meade were furnished to him rent free. There were no facilities at Fort Meade furnished by the Government available to petitioner to house his family. Petitioner included in his income for 1941 his base pay and the additional percentage thereof for longevity but did not include as income the rental or subsistence allowance. In 1933 or 1934 petitioner stored certain property in a commercial storehouse in Alhambra, California. In September 1941 he requested the storehouse to ship this property to him in Virginia. Some time in November 1941 seven or eight boxes, trunks and crates arrived by railroad *340 freight at Columbia, Virginia, representing the requested shipment. Petitioner personally picked up the shipment at the Columbia railroad station. He found some of the boxes, trunks and crates in a damaged condition and partly broken open. On checking the contents of the shipment petitioner failed to find certain articles which he had originally stored. The absent items, the date and cost of their acquisition and value in 1941 as estimated by petitioner are as follows: Date
Estimated
Item
Acquired
Cost
Value 1941
Law book, California Code
1930
$15.00
$15.00
Law book on water rights
1930
7.50
7.50
Law book, leading California
1930
7.50
7.50
cases
Boot jack
1934
2.00
Serge shirt
1924
17.50
17.50
Campaign hat
1924
15.00
10.00
Military Cap
1924
7.50
7.50
Seth Thomas Clock
1927
25.00
25.00
Army overcoat
1924
45.00
25.00
Army slacks
1924
8.00
5.00
Army blouse
1924
25.00
15.00
Infantry breeches
1918
15.00
5.00
Cavalry breeches
1924
10.00
7.00 *
2 Cavalry sabres
1923
15.00
15.00
3 Army blankets
1924
15.00
10.00
$174.00
*341 Petitioner after discovering the above articles absent wrote to the storehouse in California. The storehouse assured petitioner that all the articles he had originally stored had been shipped. Petitioner contacted the railroad and was informed that he could recover for any loss only at the rate of so much per pound which rate as applied to the missing articles was considered by petitioner as negligible in amount. Petitioner has not been reimbursed on account of the missing items. In 1936 petitioner's minor son was injured while playing in a public park in Palo Alto, California. The son's leg was pierced by a pitchfork left in a haystack on which the son was playing. The wound became infected and medical and surgical treatment was given the son for which petitioner spent $406. Petitioner consulted a lawyer concerning the possibility of bringing suit against the city to recover damages for the injuries. The lawyer recommended that a guardian be appointed for the son for the purpose of bringing suit. Petitioner's wife was appointed guardian for this purpose and suit was commenced in 1937. Petitioner and his wife as guardian entered into an oral agreement under which petitioner agreed *342 to advance the money necessary to carry on the litigation and the guardian agreed to pay petitioner from any funds recovered by the suit an amount equivalent to such advance and further the expense petitioner had incurred as a result of the injury to his son. Under this agreement petitioner advanced approximately $450 to his wife as guardian to defray expenses of the litigation. Such amount was paid prior to the taxable year involved. The defendant in the suit successfully contended that the original trial had been a mistrial. The proceeding was further delayed for various reasons. In 1941 the suit was still pending. At that time petitioner and his family were located on the East Coast. For various reasons petitioner was advised and concluded that further prosecution of the suit would be of doubtful success legally and would be prohibitively expensive and generally impracticable. Consequently the suit was dismissed in 1941. At the time of dismissal petitioner's wife as guardian had no funds and petitioner's son had $110. The son's $110 was paid to petitioner in 1941 on account of his advance of $450 for the litigation. On his individual income tax return for 1941 petitioner deducted *343 $3.99 spent for repairing his watch, $3.03 spent by him for the electric clock and $5 spent by him for a riding crop. He also deducted $94.75 for meals away from home. Respondent disallowed these deductions as personal expenses. Petitioner by his second amended petition now claims as a deduction the amount of $178 for meals. In other words, petitioner has increased the deduction claimed on his return for meals by $83.25. Petitioner did not claim any deduction on his 1941 return for traveling to and from his farm but now claims the amount of $178.40. On his return petitioner claimed as a loss the amount of $117 on account of the artcles missing from the shipment from California to Virginia in 1941. Respondent disallowed this loss for lack of substantiation. Petitioner now claims $174 as a loss in this connection. Petitioner on his return claimed a deduction of $339 [1] representing the amount furnished by him for the litigation in behalf of his son ( $450) less the amount paid him from his son's account ( $110). Respondent disallowed this claim as a personal expense. Petitioner now claims in this connection a bad debt deduction of $339 or, in the alternative, a nonbusiness expense deduction *344 of $450. Opinion We think the expenditures made by petitioner in connection with the watch repairing, the electric clock and the riding crop are not deductible business expenses as claimed by petitioner. The expense to petitioner of repairing his watch strikes us as a personal one. Petitioner acquired the watch in 1926 and still had it at the time of the hearing. While it is true that the watch was valuable to petitioner in the performance of his military duties, it is also true that it was useful to him in his personal affairs. Petitioner's watch was not limited in its adaptability to petitioner's duties as an Army officer. In this respect we think the expenditure for its repair is distinguishable from the expense involved in such cases as Marcus O. Benson, 2 T.C. 12, aff'd 146 Fed. (2d) 191; Eleanor E. Meier, 2 T.C. 458; and Helen Krusko Harsaghy, 2 T.C. 44. We think the instant expenditure is similar in principle to the expense incurred by an actor for false teeth, Sparkman v. Commissioner, 112 Fed. (2d) 774; or by a singer for throat treatment, *345 O.D. 1032, 5 C.B. 172; or by a professional golf player for golf clothes, I.T. 1488, C. B. Dec. 1922, page 145; or by a Navy officer for uniforms, I.T. 1937, III-1 C.B. 200. See also section 19.24-1 of Regulations 103, which states in part that "the cost of equipment of an Army officer to the extent only that it is especially required by his profession and does not merely take the place of articles in civilian life is deductible." We hold that respondent correctly disallowed the expense of repairing the watch as a personal one. On similar reasoning we hold that respondent correctly disallowed the riding corp. With respect to the electric clock we are satisfied that it constituted a gift by petitioner to his company and so hold. It follows that the cost to petitioner of such clock was properly disallowed by respondent. Petitioner seeks to deduct for 1941 the amount of $178 spent by him for meals and "striker" service while at Fort Meade, as meals and lodging while away from home in the pursuit of trade or business within the meaning of the traveling expense provisions of section 23(a)(1)(A). Petitioner, under the same provision seeks to deduct the amount of $166.40 for *346 1941 spent by him in traveling on week-ends from Fort Meade to his farm in Virginia and back. We think respondent correctly disallowed both these amounts. In our opinion, these expenses were not incurred in the pursuit of a trade or business. Petitioner's trade or business during the period here involved was that of an Army officer and his post of duty was Fort Meade. While present at Fort Meade and incurring the expense of meals and lodging there petitioner was not traveling in the pursuit of business. As the court said in Commissioner v. Flowers, 326 U.S. 465, Travel expenses in pursuit of business within the meaning of § 23(a)(1)(A) could arise only when the railroad's business forced the taxpayer to travel and to live temporarily at some place other than Mobile, thereby advancing the interests of the railroad. Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors. Such was not the case here. Similarly, when petitioner went to his farm in Virginia on week-ends he was not traveling *347 to advance the interests of the Army or by virtue of military demands. He went home on week-ends from personal convenience or necessity The record before us does not justify any consideration of petitioner's farm as a trade or business and we are not, therefore, confronted with a problem involving two places of business. We think the present situation with respect to traveling expenses, including meals and "striker" service is controlled by the rationale of the Flowers decision. We hold, therefore, that petitioner is not entitled to deduct these expenses. Petitioner contends that the items of military equipment and certain law books which were missing from the shipment constituted a business loss under 23(e)(1). With respect to the Seth Thomas clock, petitioner contends that its absence from the shipment indicates that it was pilfered and consequently constitutes a loss by theft under 23(e)(3). Respondent contends that the missing items could only conceivably be considered as a loss by theft and that the record fails to establish theft. We think respondent correctly disallowed the deduction. In our opinion, the missing articles can not be considered as a business loss under 23(e)(1) *348 and must be recognized as a loss, if at all, under 23(e)(3). We agree with respondent that the record fails to establish or furnish a proper basis for an infeence of theft, nor do we consider that the facts in the instant case can properly be considered as a casualty within the meaning of 23(e)(3). The missing articles can not be considered a loss incurred in a trade or business within the meaning of 23(e)(1) because, in our opinion, the missing articles constituted personal as distinguished from business property. The missing law books are not shown by the record to have been items used or required by petitioner in his profession as a soldier or internal revenue agent. The character of the missing items of military apparel are ordinarily considered personal items. See I.T. 1937, III-1, C.B. 200. Items of military apparel generally would not seem to come within the rationale of such cases as Marcus O. Benson, supra, Eleanor E. Meier, supra, and Helen Krusko Harsaghy, supra, because such apparel is adaptable generally to continued wear to the extent that they replace regular clothing. Furthermore, the missing items were purchased at least 17 *349 years prior to 1941 and the record does not establish that such items were in 1941 suitable for or intended to be used by petitioner in connection with his official duties. Petitioner did not establish that the missing military items had not become obsolescent nor that he intended, did, or could have used such items as regulation equipment in 1941 at Fort Meade. For these reasons we consider section 23(e)(1) unavailable to petitioner in this connection. Section 23(e)(3) permits deductions on account of loss by personal property not compensated for by insurance or otherwise, "if the loss arises from fires, storms, shipwreck or other casualty or from theft." Petitioner suggests on brief that the circumstances here indicate that the missing items were stolen. We do not think that the circumstances warrant a conclusion of theft. It is true that theft constitutes a possible explanation for the absence of the items from the shipment, but there are other possible explanations which are as probable and plausible as theft. We do not feel justified under these circumstances in concluding that theft is the exclusive possibility or probability. There remains the possibility that the missing *350 items may be considered as a loss arising from "other casualty". In the early case of Fred J. Hughes, 1 B.T.A. 944, we held that the rule of ejusdem generis applied to the word casualty as used in 23(e)(3). See also Thomas J. Gurry, 27 B.T.A. 1237, and Ray Durden, 3 T.C. 1. Under such rule a casualty under the statute must bear some analogy to fires, storms or shipwreck. Generally "other casualty" has been confined by the courts to events having the characteristic of being sudden, unexpected and unusual. Were "other casualty" delimited in its application to include ordinary, commonplace froms of loss of personal property, the resulting and practical difficulties would not be difficult to imagine. The judicial tendency to limit "other casualty" to sudden, unexpected and unusual events similar to fires, storms and shipwreck has the practical advantage of confining personal losses to somewhat dramatic settings which are susceptible to identification and verification by the administrative authorities. Whether or not a particular event constitutes a casualty within the purview of 23(e)(3) is largely a matter of degree and judgment. In the light of *351 these general considerations we are of the opinion that losses of personal property arising in storage or transit and otherwise unexplained, as in the instant case, are not the result of any sudden, unexpected or unusual cause but are more on the side of the commonplace and usual. We therefore do not consider the loss here as arising from "other casualty" within the meaning of 23(e)(3). We hold that petitioner is not entitled to any deduction on account of the items missing from the shipment. Guy I. Rowe, 3 B.T.A. 1228. [2]
Petitioner claims as a bad debt, or alternatively, as a nonbusiness expense under 23(a)(2) the amount of $399 [3] or $450, respectively, on account of the $450 advanced by him to his wife as guardian in connection with the tort action. *352 In our opinion, petitioner is not entitled to any deduction under either of the theories advanced by him. Petitioner can not deduct as a bad debt any amount on account of his advances to his wife as guardian because under the agreement between petitioner and his wife as guardian no debt in his favor was created. Petitioner's wife as guardian promised to repay petitioner the amount of his advance plus an amount equivalent to the amount he had spent for doctor and hospital expense only if the suit was successful and only out of funds recovered as a result of such suits. In other words, the guardian's obligation to make such payments to petitioner was subject to a condition precedent, i.e., recovery of sufficient funds, which condition was never fulfilled and consequently the guardian's obligation never arose. We do not think that petitioner is entitled to a deduction on account of his payments to his wife as guardian by virtue of section 23 (a)(2) as a nonbusiness expense. Petitioner did not pay the amounts here involved as litigation expenses of his own but on behalf of another under an agreement by which he would become entitled, in the event of successful *353 recovery, to reimbursement not only for his advances but also for other amounts paid by him as doctor and hospital expenses. We hold that respondent correctly disallowed the deduction claimed in this connection. Decision will be entered for respondent. Footnotes
*. (*in second amended petition petitioner states estimated value at $7.50 but testifies and on brief states estimated value at $7.00.)↩
1. Apparently a mathematical error and should have been $340.↩
2. Although not clear from the opinion the application of section 214(a)(6) of the Act of 1921 was raised in the pleadings. Section 214(a)(6) of the Act of 1921 is essentially the equivalent of section 23(e)(3) of the Code. Consequently the decision of the Rowe case necessarily involves a holding that the loss was not a casualty and does not turn exclusively on the determination that the loss was not a business loss.↩
3. See note 1 above.↩